# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION
**719 Church Street, Nashville, TN 37203**

FILED
26 MAR 23 AM II: 22
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

JAMES D. CRABTREE,

Plaintiff,

v.

SMITH COUNTY, TENNESSEE,
JEFF MASON, County Mayor, in his official capacity,
SHERIFF STEVE HOPPER, in his official capacity,
LT. RANDY GLOVER, in his official capacity
DEPUTY JEFF SILCOX, in his official capacity,
ALEXIS DOXOLD, ADA Coordinator, in her official capacity,

Defendants.

Case No. 2:26-CV-0023

## COMPLAINT

Plaintiff James D. Crabtree, proceeding pro se, brings this action against the above-named Defendants and alleges as follows:

## NATURE OF THE ACTION

Plaintiff brings this civil action under Title II of the Americans with Disabilities Act, 42 U.S.C. § 1983, and the Fourteenth Amendment. Plaintiff alleges that Smith County and its officials denied him access to the courthouse on multiple occasions despite an approved ADA accommodation, acted pursuant to an inflexible and unlawful security policy, and failed to provide any meaningful process for review or correction. Plaintiff seeks declaratory and injunctive relief, compensatory damages, and other appropriate remedies.

## I. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including:
   o Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131–12134;

- o 42 U.S.C. § 1983;
- o The Fourteenth Amendment.
2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.
3. Venue is proper because all events occurred in Smith County, Tennessee.

## II. PARTIES

5. Plaintiff James D. Crabtree is a resident of Tennessee and a qualified individual with a disability.
6. Defendant Smith County, Tennessee is a public entity subject to Title II of the ADA.
7. Defendant Sheriff Steve Hopper, sued in his official capacity, is responsible for training, supervision, and enforcement of courthouse security policies.
8. Defendant Deputy Jeff Silcox, sued in his official capacity, enforced the Administrative Order and denied Plaintiff access.
9. Defendant Lt. Randy Glover, sued in his official capacity, enforced the Administrative Order and denied Plaintiff access.
10. Defendant Alexis Doxold, sued in her official capacity as ADA Coordinator, is responsible for ADA compliance, training, and grievance procedures.
11. Defendant Mayor Jeff Mason, sued in his official capacity as County Mayor, is responsible for county administration and was notified of ADA violations.

## OFFICIAL CAPACITY CLARIFICATION

All individual Defendants are sued in their official capacities only. Smith County is the real party in interest for all claims seeking declaratory, injunctive, and monetary relief.

## III. STATEMENT OF FACTS

12. On August 14, 2025, Judge Branden Bellar issued a memo to Judge Brody Kane regarding courthouse security. (Exhibit A-1)
13. On August 29, 2025, an Administrative Order was issued prohibiting cell phones and bags in the courthouse. (Exhibit A-2)
14. On September 16, 2025, Plaintiff arrived at the courthouse for a scheduled matter. Deputies Silcox and Glover refused entry due to the Administrative Order. Plaintiff informed them that his cell phone and medication bag were medically necessary. No accommodation was offered. (Exhibit B-1)
15. On September 16, 2025, the County Attorney was present in the courtroom as Plaintiff's attorney when Plaintiff was denied access to the courthouse. Plaintiff informed the County Attorney at that time that the Administrative Order conflicted with his disability-related needs and prevented him from entering the courthouse. The County Attorney therefore had firsthand knowledge of the denial of access, Plaintiff's disability-related need for his medical equipment, and the conflict between the Administrative Order and

federal law. Despite this direct knowledge, no corrective action was taken, and the Administrative Order continued to be enforced in a manner that denied Plaintiff access to the courthouse.

16. On the same day, Plaintiff contacted the General Sessions Judge who issued the Administrative Order and informed him that the Order was being enforced in a manner that denied Plaintiff access to the courthouse due to his disability-related needs. Despite this notice, the Order was not modified or suspended, and deputies continued to enforce it without providing reasonable modifications.

17. On December 16, 2025, Plaintiff informed Deputy Silcox that his ADA accommodation had been approved and requested that the Deputy verify the approval with the ADA Coordinator, Deputy Silcox did not check the accommodation status. Plaintiff raised his voice showing his disapproval, Jeff Silcox then motioned toward the jail area while stating words to the effect of, "Do you want to go back there?" This occurred while Plaintiff was attempting to enter the courthouse for a scheduled matter and after Plaintiff had notified county officials of the approved accommodation. (Exhibit B-9 Video)

18. Plaintiff also possesses video evidence recorded on December 16, 2025, documenting the denial of courthouse access by Deputies Silcox and Glover despite Plaintiff's approved ADA accommodation. The video further captures a supervising sergeant acknowledging that it had been "some time" since staff received ADA training, Deputy Silcox attempting to block Plaintiff's camera and instructing that recording would not be permitted, and the undersheriff confirming that staff would follow the judge's order once the judicial assistant obtained the necessary signature. The footage also shows the judicial assistant engaging in argumentative and dismissive conduct toward Plaintiff and his wife during the accommodation process. This video will be submitted to the Court at the appropriate stage of the proceedings or upon the Court's request. (Exhibit B-9 Video)

19. On October 2, 2025, Plaintiff submitted an ADA accommodation request to ADA Coordinator Alexis Doxold. On October 3, 2025, ADA Coordinator Doxold approved the accommodation. (Exhibit B-2)

20. On October 7, 2025, Plaintiff entered the courthouse with the approved accommodation. (Exhibit B-1)

21. On November 27, 2025, Plaintiff notified County Mayor Jeff Mason of the access issues. (Exhibit C-1)

22. On December 16, 2025, Plaintiff was again denied entry despite the approved accommodation. (Exhibit B-3, B-9 Video)

23. On December 16, 2025, Plaintiff had to fill out a form that the General Sessions Court had drawn up. Plaintiff had to wait about 15 minutes before the judge signed the approval. (Exhibit B-9 Video)

24. On December 16, 2025, Plaintiff sent a notice of ADA violations to the ADA coordinator to be distributed to the Sheriff's Office Courthouse Security and the County Clerk. (Exhibit B-4)

25. On December 17, 2025, Plaintiff received a email from Christie Gregory stating that the ADA Violation list had been forwarded to the County Attorney. (Exhibit B-5)

26. On December 17, 2025, Plaintiff sent a Formal Notice of Constitutional Violations to the County Mayor, Sheriff, County Clerk of Courts and County Attorney. (Exhibits B-6, B-7, B-8)

27. On December 18, 2025, Plaintiff filed written complaints against Deputy Silcox, Lt. Glover, and Judicial Assistant Christie Gregory. (Exhibits D-1, D-2)
28. On December 18, Plaintiff emailed County Attorney Hassler notifying him of the access issues. (Exhibit D-3)
29. On January 8, 2026, Plaintiff submitted a TPRA request for personnel records. (Exhibit E-1)
30. On January 12, 2026, Plaintiff delivered a final written notice to county officials and obtained signed receipts. (Exhibit C-3, C-4, C-5, C-6) Plaintiff also emailed the notice to County Attorney Hassler. (Exhibit C-7)
31. On January 12, 2026, Hassler acknowledged receipt and stated the county was consulting outside counsel. (Exhibit C-8)
32. On January 15, 2026, the County responded to the TPRA request with incomplete records, including "N/A" entries. (Exhibit E-1)
33. On January 21, 2026, Plaintiff sent a Complaint packet to the Department of Justice and the Tennessee Administrative Office of Courts. (Exhibits F-1, F-2)
34. On January 26, 2026, Plaintiff submitted a TPRA request for Courthouse video for the dates of August 30,2025, December 16, 2025 and December 17, 2025, and Smith County Courthouse entrance and security policies. Received response "No such records exists". (Exhibit E-2)
35. On February 2, 2026, Plaintiff submitted a TPRA request for all records related to the Administrative Order. (Exhibit E-3) The County produced only a single memo. (Exhibit A-1)
36. On February 2, 2026, Plaintiff submitted a TPRA request for the Smith County Sheriff's Department's Policies and Procedures, Training Policy, POST Training Records, Firearm Qualification Records, Courthouse Policies and Procedures, Prohibited Items List and Security Policy. (Exhibit E-4)
37. On February 9, 2026, Plaintiff informed the Records Clerk Marcie St. John that "N/A" is not a lawful TPRA response. (Exhibit E-5)
38. On February 11, 2026, Plaintiff requested the names of the official records custodians for the Sheriff's Department and the Courts. (Exhibit E-6)
39. On February 16, 2026, Plaintiff requested ADA Coordinator training records, ADA complaint logs, and ADA training records for county employees. (Exhibit E-7)
40. On February 23, 2026, Plaintiff sent a request to the Tennessee POST for Smith County Sheriff's Department Training Compliance. (Exhibits E-8, E-9)
41. On March 4, 2026, Plaintiff received a response from POST requesting ID to process the request. (Exhibit E-10)

IV. FAILURE TO INTERVENE

42. Despite receiving notice of Plaintiff's approved accommodation and the access issues occurring at the courthouse, Defendants did not take corrective action to ensure that the accommodation was implemented or that courthouse access was provided. County officials with authority to intervene, including the Sheriff, deputies, the ADA Coordinator, and the County Mayor, were informed of the situation but did not act to prevent the continued enforcement of an administrative order in a manner inconsistent with federal requirements.

43. The County Attorney had firsthand knowledge of Plaintiff's daughter's medical needs, having personally witnessed the medical emergency at the school and heard the teacher describe her condition. Despite this direct knowledge, and despite receiving multiple written notices of ADA and constitutional violations, the County Attorney did not intervene, advise corrective action, or ensure that Plaintiff's approved accommodation was implemented.

## V. LEGAL STANDARDS

Title II of the ADA requires public entities to provide individuals with disabilities full and equal access to all services, programs, and activities, including access to the courts. Public entities must make reasonable modifications to policies, practices, or procedures when necessary to avoid discrimination.

Under 42 U.S.C. § 1983, state and county officials acting under color of law may not deprive individuals of constitutional rights, including the First and Fourteenth Amendment right of access to the courts.

Federal law supersedes any conflicting administrative order or local policy. Public officials may not enforce an order in a manner that violates federal rights, and qualified immunity does not protect officials who act contrary to clearly established law.

## VI. ONGOING HARM

Plaintiff remains at risk of future denial of access because Defendants continue to enforce the Administrative Order without ADA-compliant procedures, training, or communication systems. Without court intervention, the violations described herein are likely to recur.
The risk of future harm is heightened because the officials who had actual knowledge of the violations—including the County Attorney, the ADA Coordinator, the Sheriff, and the General Sessions Judge—failed to take corrective action even after being directly informed of the conflict between the Administrative Order and Plaintiff's disability-related needs. Their inaction demonstrates that, absent court intervention, the County will continue to enforce policies and practices that deny Plaintiff full and equal access to the courthouse. This ongoing pattern of noncompliance makes injunctive relief necessary to prevent future violations.

## VII. FEDERAL LAW OVERRIDES ADMINISTRATIVE ORDERS

Federal law, including ADA Title II and the Constitution, supersedes any conflicting administrative order. Defendants' reliance on the Administrative Order does not excuse the denial of Plaintiff's federal rights, nor does it permit the enforcement of courthouse policies in a manner that discriminates against individuals with disabilities.

## VIII. CAUSES OF ACTION

Page 5 | 10

COUNT I — Violation of Title II of the ADA

Against Smith County

44. Plaintiff incorporates all preceding paragraphs.
45. Plaintiff is a qualified individual with a disability and has a child who is also a qualified individual with disabilities. (Exhibit G-1, G-2, G-3)
46. Smith County is a public entity subject to Title II.
47. Smith County denied Plaintiff access to the courthouse on September 16 and December 16, 2025.
48. Smith County failed to provide reasonable modifications.
49. Smith County failed to honor an approved ADA accommodation.
50. Smith County failed to maintain ADA training records or ADA complaint logs.
51. Smith County failed to train personnel on ADA obligations.
52. These actions constitute discrimination under 42 U.S.C. § 12132.
53. At all relevant times, each Defendant had actual notice that Plaintiff possessed an approved ADA accommodation and that deputies were enforcing an administrative order in a manner that denied Plaintiff access to the courthouse. Despite this notice, no Defendant took corrective action to prevent or stop the ongoing violations. The Sheriff and his deputies had a duty to enforce only lawful orders and to intervene when fellow officers engaged in conduct that violated federal law. The ADA Coordinator had a duty to ensure that approved accommodations were communicated, honored, and enforced. The County Mayor had a duty to ensure county departments complied with federal law once notified of violations. Smith County, through its officials and employees, failed to intervene, failed to correct the unlawful enforcement of the administrative order, and failed to prevent the continued denial of access to the courthouse. These failures contributed directly to the violations of Plaintiff's rights under the ADA, the Constitution, and 42 U.S.C. § 1983.

COUNT II — Violation of 42 U.S.C. § 1983 (Access to Courts)

Against Smith County, Sheriff Hopper, Deputy Silcox, Lt. Glover, and Mayor Mason (official capacities)

54. Plaintiff incorporates all preceding paragraphs.
55. Plaintiff has a constitutional right to access the courts.
56. Defendants denied Plaintiff entry on two occasions, one of which prevented him from attending scheduled court matters.
57. Defendants acted pursuant to county policy (the Administrative Order).
58. Defendants ignored an approved ADA accommodation.
59. These actions deprived Plaintiff of his constitutional right of access to the courts.

QUALIFIED IMMUNITY DOES NOT APPLY

60. Qualified immunity does not shield Defendants Silcox and Glover from liability because the constitutional right of access to the courts was clearly established at the time of the violation.

61. For decades, federal courts have held that individuals have a clearly established First and Fourteenth Amendment right to access the courts, including the right to enter a courthouse to file documents, participate in proceedings, and obtain government services.

62. A reasonable officer would have understood that denying courthouse access to an individual with a known disability, after receiving notice of the disability and the need for reasonable modifications, violated clearly established federal law.

63. Defendants Silcox and Glover had actual knowledge of Plaintiff's disability and actual knowledge that Plaintiff required reasonable modifications to access courthouse services.

64. Despite this knowledge, Defendants enforced an administrative order in a manner that denied Plaintiff access to the courthouse and prevented him from exercising his constitutional rights.

65. No reasonable officer could have believed that enforcing an administrative order in a manner that conflicts with federal law, including ADA Title II and the constitutional right of access to the courts, was lawful.

66. Qualified immunity does not protect officers who enforce policies or orders that are "obviously unlawful" or that violate clearly established federal rights.

67. Defendants acted with actual knowledge that their conduct violated Plaintiff's rights, or with deliberate indifference to those rights, which independently defeats qualified immunity.

68. Because Defendants' conduct violated clearly established constitutional rights and no reasonable officer could have believed such conduct was lawful, qualified immunity does not apply.

MONELL LIABILITY

69. Smith County is liable under Monell because the denial of access resulted from official policies, customs, or practices, including the enforcement of the Administrative Order without ADA-compliant procedures, the failure to train courthouse personnel, and the absence of any system to communicate approved accommodations. These policies and failures were the moving force behind the violations of Plaintiff's rights.

70. The County Attorney, as the County's legal advisor, had actual knowledge of the ongoing ADA violations and the unlawful enforcement of the Administrative Order. Despite this knowledge, he failed to provide corrective guidance, failed to advise county officials to comply with federal law, and failed to intervene to prevent continued violations. His inaction contributed to the County's deliberate indifference and ongoing failure to implement ADA-compliant procedures.

Additional Evidence of Monell Liability

71. Smith County's deliberate indifference is further demonstrated by the fact that the County Attorney—acting as Plaintiff's legal counsel on September 16, 2025—personally witnessed Plaintiff being denied access to the courthouse and was informed directly by Plaintiff that the Administrative Order conflicted with his disability-related needs. The

County Attorney also had firsthand knowledge of Plaintiff's daughter's medical needs based on prior interactions and communications. Despite this actual knowledge, the County Attorney did not advise county officials to correct the unlawful enforcement of the Administrative Order, did not intervene to ensure Plaintiff's approved accommodation was honored, and did not take any steps to prevent future violations.

72. Additionally, on September 16, 2025, Plaintiff contacted the General Sessions Judge who issued the Administrative Order and informed him that the Order was being enforced in a manner that denied Plaintiff access to the courthouse due to his disability-related needs. Despite this notice, the Order was not modified or suspended, and deputies continued to enforce it without providing reasonable modifications.

73. These failures by county policymakers and legal advisors demonstrate a systemic pattern of ignoring ADA obligations, failing to implement reasonable modifications, and allowing unconstitutional barriers to persist. The County's policies, customs, and failures—including the absence of ADA training, the lack of communication procedures, and the continued enforcement of an inflexible Administrative Order—were the moving force behind the violations of Plaintiff's rights.

COUNT III — Violation of the Fourteenth Amendment (Due Process)

Against Smith County

74. Plaintiff incorporates all preceding paragraphs.

75. Smith County acted arbitrarily and without due process by denying access despite an approved accommodation.

76. Smith County failed to provide any appeal or review mechanism.

77. Smith County failed to maintain ADA compliance systems.

78. These actions violate procedural and substantive due process.

79. Failure to Train and Supervise

80. Smith County, through the Sheriff's Office and its administrative leadership, failed to train and supervise personnel regarding ADA Title II obligations, courthouse access requirements, and the implementation of approved accommodations. Deputies Silcox and Glover, as well as supervisory personnel present on December 16, 2025, acknowledged that it had been "some time" since staff received ADA training. Despite Plaintiff's approved accommodation and repeated notice to county officials, no training, corrective action, or policy clarification was provided to courthouse security personnel.

81. The failure to train deputies and supervisory staff resulted in the continued enforcement of an administrative order in a manner that violated federal law. Smith County's lack of ADA training, lack of ADA complaint logs, and lack of ADA compliance procedures demonstrate deliberate indifference to the rights of individuals with disabilities. This failure to train and supervise was a moving force behind the denial of access on September 16 and December 16, 2025, and contributed directly to the violations of Plaintiff's rights under Title II of the ADA, the Fourteenth Amendment, and 42 U.S.C. § 1983.

## IX. CONSENT DECREE REQUESTED

Plaintiff requests that, in addition to declaratory and injunctive relief, the Court enter a consent decree requiring Defendants to adopt ADA-compliant courthouse access policies, implement a written reasonable-modification procedure, establish an ADA grievance process, provide annual ADA Title II training to deputies, supervisors, and courthouse personnel, and file periodic compliance reports with the Court for a period determined by the Court. Plaintiff further requests that the Court retain jurisdiction to enforce the consent decree and ensure ongoing compliance.

## X. RELIEF REQUESTED

Injunctive relief is necessary because the violations described herein are not isolated incidents but the result of systemic failures within Smith County's policies, training, communication procedures, and supervisory structures. Multiple county officials—including the ADA Coordinator, the Sheriff, courthouse deputies, the County Attorney, and the General Sessions Judge—had actual knowledge that Plaintiff's approved ADA accommodation was not being honored and that the Administrative Order was being enforced in a manner that denied Plaintiff access to the courthouse. Despite this notice, no official took corrective action, no procedures were updated, and no training or communication protocols were implemented to prevent future violations. Smith County lacks an ADA grievance procedure, lacks ADA complaint logs, lacks ADA training records, and lacks any system to communicate approved accommodations to courthouse security personnel. These deficiencies demonstrate that the County has no internal mechanism to ensure compliance with federal law or to prevent future violations. Because the same policies, practices, and failures remain in place today, Plaintiff remains at imminent risk of being denied access to the courthouse again.

Without court intervention, the County will continue to enforce the Administrative Order without providing reasonable modifications, will continue to deny access to individuals with disabilities, and will continue to disregard its obligations under ADA Title II and the Constitution. Injunctive relief is therefore necessary to ensure that Plaintiff receives full and equal access to courthouse services and to compel the County to adopt ADA-compliant policies, training, and communication systems that prevent future violations.

Plaintiff respectfully requests that the Court:
A. Enter declaratory judgment that Defendants violated Plaintiff's rights under ADA Title II and 42 U.S.C. § 1983;
B. Issue injunctive relief requiring Defendants to:
  1. Adopt and implement ADA-compliant courthouse access policies;
  2. Establish a written reasonable-modification procedure;
  3. Create and maintain an ADA grievance process;
  4. Provide annual ADA Title II training to deputies, supervisors, ADA personnel, and courthouse staff;
  5. Cease enforcement of any administrative order in a manner that conflicts with federal law;
  6. Guarantee Plaintiff's full and equal access to courthouse services;

C. Enter a consent decree retaining jurisdiction to monitor compliance for a period determined by the Court;

D. Award compensatory damages as permitted by law;

E. Award nominal damages for the violation of Plaintiff's constitutional rights;

F. Award costs and any other relief the Court deems just and proper.


## XI. JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

_____

James D. Crabtree
Plaintiff,
Pro Se,
25 Crescent Blvd.
Carthage, TN. 37030
(615) 715-8636
jcal35581@msn.com